BISHOP BROTHERS *v.* WILLIAM CURPHEY ET AL.

ESTATE OF DECEDENT.  *Benefit on policy in Knights of Pythias.  Whether assets.*

G. became a member of the "endowment rank of the Knights of Pythias" and received a policy for the payment of a certain benefit at his death, provided he had paid all fees and dues exacted by the order. Sect. 1 of Art. IX. of the Constitution of the order, provided that : "Upon the death of a member, the benefit shall be paid to the widow and children of the deceased; and if there be no widow and children, then to the father and mother, sisters and . brothers share and share alike ; *provided,* that the amount of said benefit shall be held sacred, a legacy for said legatees, and shall never be liable for or appropriated to the payment of any debts against the estate of the deceased member ; *provided further,* that the member shall have full power to dispose of the sum accruing upon his death by will." And this section further provided that, "if none of the aforesaid persons be alive and the deceased shall have made no disposition by will," then the benefit, after payment of the funeral expenses of the deceased, shall revert to the order, and be paid into the "Widow's and Orphan's Fund." G. died, leaving a will by which he appointed C., his executor, and directed him, after payment of a few specified debts out of the benefit to be collected on his policy, to pay the balance to K., as legatee. C. qualified as executor and collected the benefit on the policy, but refused to pay a debt which the decedent owed B., because he was not directed by the will to pay it out of the benefit fund, and he had received no other assets belonging to the testator's estate. B. obtained a judgment against the executor, and filed a bill in chancery to compel him

to pay the judgment out of the money collected on the policy, on the ground that it belonged to the deceased, and was, therefore, assets in the hands of his' executor, primarily liable to the claims of creditors.   *Held*, that the bill is not maintainable.   The benefit did not belong to G., but he had only a power of appointment of the beneficiary thereof.   If he had not exercised this right, the benefit would have reverted to the society, after payment of his funeral expenses, and his creditors would have had no claim upon it; and they gained nothing by his exercise of that right.

APPEAL from the Chancery Court of Warren County.

Hon. U. M. YOUNG, Chancellor.

In August, 1878, James Grant became a member of the "endowment rank" of the order known as the "Knights of Pythias." The section or lodge to which he attached himself was located at Vicksburg, in this State, where he resided. This order was incorporated in the District of Columbia, in 1870, and under its charter, there obtained, the subordinate lodge of Vicksburg was organized. As a member of the order, Grant was required to pay certain fees and dues; and in consideration of the payment thereof he was to become entitled to a benefit of $2,000 at his death.

Sect. 1 of Art. IX. of the "Constitution for sections of the endowment rank of the Knights of Pythias" is as follows : "Upon the death of a member of this rank the benefit * * * shall be paid * * * to the widow and children of the deceased; and if there be no widow and children, then to the father and mother, sisters and brothers, share and share alike; *provided*, that the amount of said benefit shall be held sacred, a legacy to and for the said legatees, and shall never, under any circumstances, be liable for or be appropriated to the payment of any debts against the estate of said deceased member; *provided further*, that the member shall have full power to dispose of the sum, so accruing upon his death, by will; or he may name a party at the time he becomes a member of this rank, to whom the money shall be paid upon his death." This section further provides, that "if none of the aforesaid persons be alive, and the deceased shall have made no disposition by will," then the benefit, after the payment of the fu-

neral expenses of the deceased, should revert to the order and go into the widow's and orphan's fund.

The policy issued to Grant as a member of the endowment rank of the Knights of Pythias, was, by his direction, made payable to Hiram French, as trustee. French died soon afterwards, and Grant applied to have the name of William Curphey substituted for that of Hiram French. The Constitution of the order provided for such substitution ; but there was some delay on Grant's application, and he died without having secured the substitution applied for.

Grant died in July, 1879, unmarried, childless, and leaving no parents, brother, or sister surviving him. But he left a will in which he appointed William Curphey his executor, and directed him to collect the benefit due on his policy above referred to, and after paying a few special debts, to pay over the balance to Mrs. Lizzie King. Curphey qualified as executor and collected the benefit on the policy.

Bishop Brothers, who were creditors of Grant at the time of his death, applied to his executor for payment of their debt, which he refused, because he was not directed by the will to pay their debt out of the benefit to be collected on the policy of insurance, and he had not received any other assets belonging to Grant's estate. Thereupon they sued the executor and obtained judgment against him for the amount of their debt, and then filed the bill in this cause, charging that the money collected on the policy of insurance became, in the hands of the executor, assets of Grant's estate, and primarily liable to the payment of his debts, and asked that the executor be required to pay their debt out of said fund. The chancellor denied the relief sought and dismissed the bill. And thereupon the complainants appealed.

*Buck & Clark*, for the appellants.

The endowment rank of Knights of Pythias possesses no legal existence except such as it may derive from the supreme lodge under the authority of which it works. The supreme lodge is an institution chartered under a general law for the

District of Columbia, empowering the grant of charters to such associations. It is, therefore, a foreign corporation, and while entitled to conduct its affairs in this State, it must always be in subordination to her laws and their policy. Sect. 104, 2 Code 1880 ; *Williams* v. *Creswell*, 51 Miss. 817.

While it may be true that the endowment rank embraces in the objects of its organization charitable features not common to ordinary life insurance companies, it will not admit of denial that the insurance of the lives of its members is its primary object. Therefore, the proceeds of these endowment certificates, as it relates to the means and process by which they are created, and their legal *status* with respect to the rights of creditors, or those who, under the law, are entitled to them, stand in the attitude of the proceeds of ordinary life policies, and when they come to the hands of the legal representative of the estate of the deceased become assets, to be administered as the law directs, unless it can be maintained, as appellees contend, that in looking for the law, under which their distribution is to be made, reference must be had to the Constitution of the " endowment rank," and not the law of the State.

That clause of Art. IX. empowering a member to dispose of the proceeds of his certificate by will, conferred no new authority, and was but declaratory of a right that he could exercise without it, under the laws of this State. But exercised under the one authority or the other, it must be, as we contend, in subordination to the rights of creditors, if the quality of assets attached to the fund.

Money accruing to the estate of deceased after his death, from whatever source, shall be assets. Sect. 2025, Rev. Code.

Upon the theory that the appointment of French trustee to collect the fund, as originally made by Grant, had, by French's death, become a nullity (and evidently this was Grant's idea), the benefit certificate stood as if payable to Grant himself, or his legal representative, and the proceeds became, at his

death, a part of Grant's " estate," subject to his right of disposition by will, exclusive of the rights of creditors, as it is claimed Art. IX. directs, or subject to those rights as provided by the laws of the State and their declared policy. It was dealing with his " estate " that Grant directed his executor to pay certain special legacies and debts out of the fund, and declared Mrs. King his residuary legatee. Appellees urge that the power conferred by Art. IX. to appoint by will a beneficiary of the fund, must be taken in connection with the first proviso of the article, declaring the fund a " sacred legacy," and that under no circumstances shall it ever be appropriated to the payment of the debts of the deceased member. To this it can be fairly answered, that the " sacred legacy " clause is in terms intended to apply only to the class of legatees that had been named, to-wit: the widow and children, etc., and that prohibiting its appropriation to the payment of debts is a prohibition only in protection of the rights of the same class of legatees, for it will not be questioned that, in conformity with Art. IX., the member may so appropriate by will, as Grant partially did in this case.

*Simrall & Magruder*, for the appellees.

If the court will carefully analyze Art. IX. of the Constitution of the endowment rank, it will discover the fundamental principle of the institution, and its plan of operation.

Primarily, it is designed to provide a fund for the widow and children of the deceased member, or father and mother, sister and brother, etc. This primary object is subject to two provisos: " It shall be held a sacred legacy to and for said legatees — the kin alone, and shall never under any circumstances be liable for, or be appropriated to the payment of any debts against the estate of the deceased member." The second proviso is, the member may have " full power to dispose of the fund by will," or he may name a party, when he becomes a member, to whom the money shall be paid.

If there be none of the relatives alive, and no disposition has been made by will, after funeral expenses, the fund shall

be paid into the widow's and orphan's fund, of the lodge of which he was a member.

It seems to us no argument or illustration is necessary to arrive at the "intent" of Art. IX. Plainly it means, that on compliance with the terms and conditions prescribed in the Constitution, a benefit has been purchased or secured for his family or relatives, or to a person designated when he joins, or to the appointee by. his will. In law, the fund is no part of the assets or estate of the deceased member. His membership, and payment of mortuary dues, etc., has imposed on the officers of the institution the obligation to pay the "benefit" to his family or relatives, if he has any, or to his appointee by will. If there is no one to claim in one of these rights, then the fund cannot be reached by his creditors, but falls into the widow's and orphan's fund of the lodge. Under no circumstances can it be liable to, or appropriable to, the debts of creditors.

Counsel for appellants make a point on the circumstance, that Grant in the first instance took out the certificate in the name of French, trustee. And that after French's death he applied to change it to the name of "Curphey," trustee. But in fact, the change was not perfected when Grant died.

If we understand counsel, they predicate this argument, that French, being dead, a court of equity, would direct the fund to those entitled under the law, and Lord Thurlow is quoted from the text of Hill on Tr., to that effect. But how does that help the appellants, there being none of the relatives enumerated alive,— if it were conceded, that the testamentary disposition was invalid, the fund will go to the "widow's and orphan's fund," as the beneficiary indicated in those circumstances to take.

CAMPBELL, C. J., delivered the opinion of the court.

We will not be understood to assent to the proposition that an insurance association can, by any regulation it may adopt, enable insolvent debtors to invest their means in the procure-

ment of benefits to others to be held beyond the reach of creditors contrary to the laws of this State ; but this case does not present this question. The bill is not framed to reach the assets of an insolvent debtor, attempted to be placed beyond the reach of creditors in fraud of their rights. It asserts a right to subject the fund, because of the assumption that it belonged to the debtor, and was assets in the hands of his personal representative, and, therefore, accrued to his creditors by virtue of the law. How did it belong to the debtor? Only according to the contract made by the society, and its terms are contained in Art. IX., of the "Constitution for Sections of the Endowment Rank of the Knights of Pythias." By this the member had only a power of appointment of the beneficiary of the benefit on his death, failing to exercise which the benefit would go to the society in the situation in which this member was, without wife or child, or father or mother, or brother or sister, and exercising which, his appointee was entitled to the exclusion of all others. By the terms on which the certificate of membership was issued (which constituted the contract of the society, and fixed its liability and the right of the member and those claiming under him), creditors had no rights which they could enforce against the society, and the exercise by the member of his right to designate a beneficiary of the fund did not generate a right in creditors which they did not have before. If he had not made a will disposing of the benefit, it would, by the rules of the society, have belonged to it for the widow's and orphan's fund, after paying the funeral expenses of the deceased member. It was his declaration that others should have it, which prevented it going to the widow's and orphan's fund. It is inconceivable that his testamentary wish that certain persons should have it should have the magical effect to divert it from them to his creditors, who but for that would have had no claim on it. If it was his it would be appropriable to creditors. If it was not his and he had only a power of appointment with reference to it, his exercise of this power created no right in creditors.

Without the will creditors could not reach the benefit. By it they cannot, because it devotes it to others, and the will governs.

Decree affirmed.